### CONVERSE, Adm'r &c., vs. KETCHUM and others.

Equity will not restrain a party in the possession of land, and who has himself the whole beneficial interest, or holds under those who have that interest, from disposing of crops which he has raised upon it, in favor of one who has only a technical legal right to the possession.

Converse, Adm'r &c., vs. Ketchum et al.

An administrator, on representing to the county court that he had fully administered the estate of his intestate, paid all debts &c., obtained a final accounting; but it remained undetermined whether a small amount was not due him from the estate. There was no order extending the time for the settlement, discharging the administrator, or assigning the estate to the heirs. In an action by the administrator to restrain a person who occupied land belonging to the estate under a lease from the guardian of the minor heirs, from selling a crop raised by him, *Held*, that there was no ground for the equitable interference of the court, as the administrator could not be charged under the circumstances with the value of any part of the crop in question, in his final settlement, and as it was not certain that anything was due him from the estate, or if anything was due, the estate, irrespective of that crop, was ample security for the amount.

APPEAL from the Circuit Court for *Columbia* County.

The relief sought by the complainant in this action was, that an account might be taken of all crops raised upon the premises therein described during the year 1860, in order that the plaintiff's share thereof, as administrator, might be ascertained, &c. ; that a receiver might be appointed by the court to take charge of said crops until the final determination of the suit; that a just division of the same might be made between the plaintiff and the defendant *Ketchum*; and that by the judgment of the court the plaintiff's share thereof, as administrator, might be set over and delivered to him. The judge of the circuit court filed a finding of facts and his conclusions of law thereupon; in accordance with which, judgment was rendered declaring the plaintiff, as administrator, entitled to one half of said crops, restraining the defendants from removing or disposing of said one half, and directing them, within ten days from notice of said judgment, to deliver said share of the crops to the plaintiff, or in case of their failure or inability to do so, directing them to pay over to him the value thereof in money, &c. The facts upon which this relief was sought and granted, are sufficiently stated in the opinion of this court. The defendants filed written exceptions to the findings of facts and conclusions of law, and appealed from the judgment.

*Alva Stewart*, for appellants.

*D. J. M. Loop, E. Taylor* and *H. R. Palmer*, for respondent.

*By the Court*, PAINE, J. The view we have taken of the general nature of this case will preclude the necessity of examining most of the questions of fact discussed on the argument. That view is, that there is an entire failure of any ground for equitable interference.

The action was brought by the plaintiff, as administrator of the estate of his deceased son, to restrain the defendants from taking or disposing of the crops raised on the estate in the year 1860. It appears that the plaintiff was appointed administrator in the year 1856. The estate was leased to other parties prior to January, 1859, when the plaintiff leased it to the defendant *Ketchum* for one year for half the crops. The land of which *Ketchum* took possession included not only that part of the estate which was subject to the control of the administrator, but also that part which constituted the homestead on which the widow and family resided. This, however, was with her consent. During that year the defendant *Dunham* intermarried with the widow, and the plaintiff alleges that he then persuaded the defendant *Kenyon* to enter upon and oust *Ketchum*, and induced them to deny the plaintiff's right to any share of the crops and to deliver them to himself. Litigation was commenced by the plaintiff in respect to the crops of that year, and they are not involved in this suit. The facts in regard to them were probably stated as a part of the general history of the case.

But it further appears that in the fall of the year 1859, the plaintiff presented a petition to the county court representing that he had "fully administered the estate, and paid all the debts of the deceased and the expenses of administration," and asking to have his account examined and allowed. A hearing was had upon due notice, and an order made by the county judge, which, after settling the account, charged the administrator with a balance due the estate of $9.16. From this order there was an appeal to the circuit court, which is still pending, and the case does not show which party appeal-

ed, though our recollection is that it was stated by counsel that it was not the plaintiff. This, however, is unimportant. There is a further return also by the county judge showing that by mistake two items were omitted in footing up the account, and that the plaintiff ought to be further credited with them, both amounting to $175.68. It further appears that in the same fall Benjamin Ferguson was appointed general guardian of the minor heirs, and duly qualified, and returned an inventory of the farm in question as their estate. He also then told *Dunham* to take charge of the estate, and the next spring leased it to him, and *Dunham*, assisted by the other defendants, raised the crops in controversy here, claiming the estate as lessee of the guardian, and by the authority of his wife. It further appears that there was never any order extending the time for the settlement of the estate beyond the time originally allowed by the statute, and that there was no order made discharging the plaintiff as administrator, or assigning the estate to the heirs.

Upon these facts, whatever ground there might be for equitable aid if the litigation was between the administrator and strangers to the estate—and whether there would be any or not in that case, we do not decide—it seems to us clear that there is none where the relief is asked against the widow and heirs, or those who hold under them. Equity could only interfere, if at all, upon one of three grounds: either to preserve these crops for the benefit of creditors, or for the benefit of the heirs and those beneficially interested after the settlement of the estate, or for the protection of the administrator himself. It fully appears that neither of the first two exists here. For the plaintiff's own petition shows that he has paid all the debts of the deceased and the expenses of administration. And there is certainly no occasion to interfere for the benefit of the heirs, for they are in effect the parties against whom the relief is asked. We consider the case upon this point just as it would be if the heirs were adults and were themselves in possession and

had raised these crops, and this action were brought against them.　Assuming then that the debts were all paid and that the administrator himself had no balance of account against the estate, there would be no ground for enjoining the heirs from disposing of the crops which they had raised, for the only ground for interference would be for their benefit.　Equity would not interfere even to prevent them from wasting their crops, when they would be the only losers.　We hold to this conclusion, assuming the entire correctness of the plaintiff's claim that he is, as a matter of technical legal right, still entitled under the statute to the possession of the estate, on the ground that he has not been discharged nor the estate assigned to the heirs. For equity will not restrain a party in possession from disposing of crops which he has raised, in favor of one who has only a technical legal right to the possession, without any beneficial interest, this being wholly in the party sought to be restrained.

And if this conclusion would be correct, if the heirs were adults and themselves defendants, it is equally so where the proceeding is against those holding by the authority of the widow, and the guardian of the other heirs.

The only remaining reason that could be suggested for the extraordinary interposition of a court of equity, is, as already stated, for the protection of the administrator.　There can be no pretense that this exists on the ground that he will be held chargeable in his account with half the value of the crops here in controversy.　Certainly the widow and the heirs can never charge him with the value of crops which he never had, and which were raised and disposed of by the husband of the widow acting under her authority and as lessee of the guardian of the heirs.　The same illustration used above is applicable here.　The heirs themselves could not so charge him if they were adults, and had raised and used the crops, and that although he might at the same time have had such a legal right to the possession as would have sustained an ejectment. And the same is true now, though the heirs are minors and act

by their guardian. The only other basis for any claim that the administrator needs protection is, that he has a balance of account in his favor against the estate. As already shown, the order actually made on that subject fixed the balance against him. But assuming that the subsequent statement of the county judge shows what would have been his decision, except for the mistake, the most favorable statement that can be made for the plaintiff is, that the settlement of his account is still pending, and that he may have a balance in his favor. Perhaps the mere fact that it is yet undetermined whether he will have any claim at all, would be a sufficient answer to his request for the extraordinary aid of equity against those beneficially interested in the estate. Equity does not usually interfere in behalf of those who may have a claim, yet possibly may not. It usually requires it to be shown that clear, positive reasons for relief do exist, not merely that they may exist. But, without placing our conclusion wholly upon this ground, we think it clear that this, taken in connection with the fact that if it should finally be decided that there is a balance of account in the plaintiff's favor, the estate is ample security for that balance, irrespective of those crops, and that it will be perfectly competent for the court having jurisdiction of the settlement and assigning of the estate, to make such order or judgment as will secure such balance to the plaintiff, furnishes a complete answer to his claim for equitable aid now.

For these reasons we think the complaint should have been dismissed. The judgment is reversed, with costs, and the cause remanded with directions accordingly.