WARREN REMA v. STATE OF NEBRASKA.

FILED OCTOBER 6, 1897.   No. 9091.

1. **Indictment and Information: TIME OF COMMISSION OF OFFENSE: LARCENY.** Under section 412 of the Criminal Code, an indictment or information is not rendered fatally defective "for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense, nor for stating the time imperfectly."

2. ———: ———: ———. An information for larceny is not to be

quashed because it alleges that the offense was committed "on or about" a certain date.

3. ———: ———: ———. An information which avers that the defendant "unlawfully and feloniously did steal, take, and drive away one cow" sufficiently charges that the taking was with the felonious intent to permanently deprive the owner of his property.

4. Justice of the Peace: JURISDICTION. The jurisdiction of a justice of the peace is co-extensive with the territorial limits of his county, and a judgment rendered by him in a precinct thereof other than the one for which he is elected is not void on that account. *Jones v. Church of the Holy Trinity*, 15 Neb., 81, followed.

5. Instructions: EXCEPTIONS. An instruction will not be reviewed unless the record affirmatively discloses that an exception was taken thereto in the trial court.

6. Larceny: EVIDENCE. When the owner of stolen chattels, or the person from whose immediate possession the same were taken, is examined as a witness, his testimony that he did not consent to the removal of the property is indispensable to a conviction for larceny.

7. ———: ———. Evidence *held* to sustain the verdict.

ERROR to .the district court for Keith county. Tried below before GRIMES, J. *Affirmed.*

The facts are stated in the opinion.

*A. F. Parsons,* for plaintiff in error:

The motion to quash the information should have been sustained for the reason that the alleged offense is not therein charged to have been committed on a day certain. (*Mau-zau-mau-ne-kah v. United States*, 1 Pin. [Wis.], 124.)

The plea in abatement should have been sustained because the transcript shows that the justice of the peace before whom the complaint was made, and who issued the warrant, was a justice of the peace in and for Lincoln county, and he was acting in Keith county. (Criminal Code, sec. 260; *State v. Shropshire*, 4 Neb., 413.)

The demurrer to the information should have been sustained for the reason that no felonious intent was alleged therein, while proof of such intent was necessary to make

out the offense charged. (Criminal Code, sec. 442; *Thompson v. People*, 4 Neb., 528; *Mead v. State*, 25 Neb., 447; *Waidley v. State*, 34 Neb., 251; *Cobb v. State*, 40 Neb., 545.)

Mere conversion is not larceny. (*Turner v. O'Brien*, 5 Neb., 542.)

In a prosecution for larceny, proof of the nonconsent of the owner, by the best evidence, is indispensable to a conviction. (*Perry v. State*, 44 Neb., 416; *Bubster v. State*, 33 Neb., 663.)

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

NORVAL, J.

This was a prosecution, for the crime of larceny, in the district court of Keith county. The information under which the accused was convicted charged that he, on or about the 15th day of February, 1896, in the county of Keith, "unlawfully and feloniously did steal, take, and drive away one cow, color red, branded O (circle) on left hip, and branded O (circle) on left loin," and of the value of $25, the personal property of the Equitable Farm and Stock Improvement Co. of Nebraska, limited, a Nebraska corporation. The jury found the defendant guilty, and from a judgment which imposed a sentence to imprisonment for the term of twelve months in the state penitentiary, he prosecutes error proceedings.

A motion to quash the information was denied, and this ruling is the first ground urged for a reversal. It is insisted that this motion should have been sustained because the offense is not alleged in the information to have been committed on a day certain, but "on or about" a specified date. The information is not defective for the reason suggested. If, in a prosecution for larceny, it is important that it be alleged in the information the exact date the offense occurred, there is no escaping the conclusion that the state is required to prove the transaction took place at the identical time averred, else the prose-

cution must fail. On the other hand, if such proof is not indispensable to a conviction of such crime, it logically follows that the allegation in the information as to the time the crime was committed is immaterial, and such information is not defective if it omits to state the time definitely and with precision. This court has held in a prosecution for rape that it is not necessary to establish the commission of the offense on the identical date named in the information, but that a conviction may be had if it be shown that the crime was committed on any day not so remote that the statute of limitations would be a bar. *Yeoman v. State*, 21 Neb., 171; *Palin v. State*, 38 Neb., 862. The same doctrine obtains in all prosecutions where the time at which an offense was committed is not essential; and the crime of larceny is embraced within this class. In a prosecution like the one at bar a variance between the proofs and the averments in the information as to the time of the commission of the crime is immaterial, since the date the act was done is not a part of the description of the offense. It is only where time enters into the nature, or is made a part of the description, of an offense that the information must specifically aver the date of the transaction charged, for section 412 of the Criminal Code declares that no indictment (information) shall be deemed invalid or defective "for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense, nor for stating the time imperfectly." Under the foregoing section this information is sufficient, notwithstanding it charges the crime as having occurred "on or about" a specific date. (*State v. Fry*, 67 Ia., 475; *Chandler v. State*, 6 So. Rep. [Fla.], 768; *State v. Howard*, 10 S. E. Rep. [S. Car.], 831; *Vowells v. Commonwealth*, 84 Ky., 52; *Pruitt v. State*, 11 S. W. Rep. [Ark.], 822; *State v. Peters*, 107 N. Car., 876; *Arrington v. Commonwealth*, 12 S. E. Rep. [Va.], 224; *State v. Thompson*, 10 Mont., 549; *State v. McCarthy*, 10 So. Rep. [La.], 673; *United States v. Conrad*, 59 Fed. Rep., 458; *Fleming v. State*, 36 N. E. Rep. [Ind.], 154.)

It is also insisted that the trial court erred in not quashing the information because it fails to charge that the property was taken with felonious intent to convert the same to the use of the defendant without the consent of the owner thereof.  There is no force in the position.  The averment in the information is that the defendant "unlawfully and feloniously did steal, take, and drive away" the cow in question.  This is the usual form of the charge in an information for larceny, substantially follows the language in the statute, and discloses that the animal was stolen with felonious intent of the accused to permanently deprive the owner thereof without his consent.  The decisions of this court cited on page 5 of the brief of the defendant are not in point here.  They hold that any definition of larceny is faulty which omits to state the element of felonious intent.  Such intent is specifically charged in this information.  The foregoing disposes of the objection argued in the brief that the court erred in overruling the demurrer to the information, since it raised the same question as the one just considered.

Error is alleged in the overruling of the plea in abatement.  It is argued that this plea should have been sustained because the transcript discloses that John H. Cannon, the justice of the peace before whom the complaint was made, and who issued the warrant in this case, was a justice of the peace in and for Lincoln county, and had no jurisdiction of the offense.  A sufficient answer to this contention is that the plea in abatement specifically avers that said Cannon was a justice of the peace in and for West Ogallala precinct, Keith county, where he resided, and the demurrer to the plea admitted the truth thereof.  Moreover, the transcript, in at least three places, specifically states that said J. H. Cannon was a justice of the peace of Keith county, and the same is not disputed by any other portion of the record, when properly construed, although a statement found in the complaint itself is relied upon to establish, in opposition to the allegation

in the plea in abatement, that Mr. Cannon was a justice of the peace in and for Lincoln county, and acted in Keith, county.   The complaint is in part as follows:

"Before John H. Cannon, a Justice of the Peace in and for Keith County.

"THE STATE OF NEBRASKA, } ss.
  COUNTY OF KEITH.

"THE STATE OF NEBRASKA }
            v.               } For cattle stealing.
  WARREN REMA.            }

"The complaint and information of Edward Richards, of Lincoln county, aforesaid, made in the state of Nebraska, before John H. Cannon, a justice of the peace within and for said county.   *   *   * "

The words "of Lincoln county" are merely descriptive of the person who made the complaint, and should be treated as surplusage.   It is very evident that the words "within and for said county," appearing in the body of the complaint, refer to the county mentioned in the caption and in the venue, namely, Keith county, in the state of Nebraska.   The objection is too technical and devoid of merit to require further comment.

Another ground suggested why the plea in abatement should have been sustained is that it is alleged therein that Mr. Cannon was a justice of the peace in and for West Ogallala precinct in Keith county, and that he exercised the functions of his office by receiving said complaint, and requiring the defendant to appear before such justice at his office in East Ogallala precinct in said county.   It is claimed that the justice was without jurisdiction to arraign the accused, or to accept his waiver of the statutory preliminary examination, and *State v. Shropshire,* 4 Neb., 411, is cited in support of the contention. In that case it was decided that it is the duty of a justice of the peace to hold his office in the precinct for which he is elected, and that *mandamus* would lie to compel him to do so.   The question now under consideration was not

then before the court, nor was it determined. The proposition was, however, involved and passed upon in *Jones v. Church of the Holy Trinity,* 15 Neb., 81, in which case it was decided that the jurisdiction of a justice of the peace is co-extensive with the territorial limits of the county, and that a judgment rendered by him in a precinct thereof, other than the one for which he is elected or appointed, is not void for that reason. This is decisive of the point now before the court, and the plea in abatement was properly denied.

A reversal is asked because the court refused the defendant's fifth request to charge. Since the record fails to disclose that an exception was taken by the defendant to such refusal, the action of the court in that regard cannot be reviewed here. (*Unland v. Garton,* 48 Neb., 203; *Lowe v. Vaughn,* 48 Neb., 651.)

Instructions 4, 5, 6, 7, 8, and 9, given by the court on its own motion, are complained of. They having been grouped in a single assignment in the motion for a new trial, cannot be reviewed for the reason the assignment is bad as to instruction No. 5, on account of no exception having been taken thereto in the court below. (*Western Union Telegraph Co. v. Wilhelm,* 48 Neb., 913; *Graham v. Frazier,* 49 Neb., 90.)

It is finally claimed that the verdict is without sufficient evidence to support it. First, because the ownership or identification of the cow alleged to have been stolen was not established. The only testimony adduced by the state upon that branch of the case was given by Henry Chestnut, the agent of the corporation stated in the information as being the owner of the cow, who identified the animal by her brands and ear marks. The argument is that this was insufficient evidence of ownership, inasmuch as no proof was made of the recording of the brand, and attention is challenged to section 16, chapter 51, Compiled Statutes, which provides that "In all suits in law, or in equity, or in any criminal proceedings, when the title to any stock is involved, the brand on any

animal shall be *prima facie* evidence of the ownership of the person whose brand it may be; *Provided,* That such brand has been duly recorded as provided by law." It will be observed that proof of the recording of a brand is made *prima facie* evidence of owership. But that is not the only evidence receivable in proof of such fact. Certainly the owner of a particular brand is competent to testify upon the subject, and may identify his animal by the brand thereon, even though such brand may never have been recorded as provided by law. In the case at bar the cow in question was identified as belonging to the corporation, independent of the brand, by the marks on her ears. Secondly, it is contended that the evidence is insufficient, for the alleged reason it is not shown that the consent or permission of the owner was not obtained to the taking of the animal. · It is a well recognized doctrine that in a prosecution like this the non-consent of the owner to the removal of the property alleged to have been stolen must be established by the best evidence attainable in order to justify a conviction. In case the owner of the stolen chattels, or the person from whose immediate possession the same were taken, is examined as a witness, his testimony that he did not give permission to the removal of the property is necessary to convict. (*Bubster v. State,* 33 Neb., 663; *Perry v. State,* 44 Neb., 414.) Applying this rule to the facts in the case in hand, are they sufficient to show that no consent was obtained to the taking of the property? If we are able to comprehend the effect and force of the testimony, the answer must be that there was an entire lack of consent, although no witness in express terms so stated at the trial. It is disclosed by the uncontradicted testimony of several persons that the cow charged to have been stolen, and many others belonging to the Equitable Farm and Stock Improvement Company, were at the time in the immediate and exclusive possession and control of Edward Richards and Henry Chestnut, the foreman and agent, respectively, of said corporation; that on the day preceding the night of the alleged

larceny both of them were apprised that some of the cattle of the corporation in their care were going to be stolen; that Chestnut and Richards, together with Sheriff Camp and one Harding, watched the pastures in which the cattle were kept the following night, and saw the defendant enter the pasture between ten and twelve o'clock of that night and with much haste drive therefrom the cow in dispute and several others; that they followed rapidly on horseback a distance of ten or twelve miles, and saw the defendant drive the cow into a ravine or "blow out," as called by some of the witnesses, and caught the accused in the very act of skinning the animal and thereupon arrested him for the theft. Thus it was shrown by the persons in whose immediate possession the property was that the same was taken without their authority, permission, or consent. We are convinced that the taking was felonious. The judgment is

AFFIRMED.